FIRST NATIONAL BANK AT PARIS *v*. IHLE.

4-6250                                149 S. W. 2d 548

Opinion delivered March 17, 1941.

*Arnett & Shaw*, for appellant.

*Geo. A. Hall*, for appellee.

GRIFFIN SMITH, C. J. The case is similar to *First National Bank at Paris* v. *McKeen*, 197 Ark. 1060, 127 S. W. 2d 142. In the instant litigation appellee[1] received from her customers two checks issued by Blue Ribbon Coal Company, drawn on appellant bank, amounting to $123.06. They were acquired by appellee in due course of business February 29, 1936, and were part of a $422.09 deposit made Monday, March 2.

Late in the afternoon of March 2 appellant received information that certain out-of-state checks deposited with it by Blue Ribbon Coal Company had been dishonored. The items comprising the deposit (referred to in the McKeen Case) were re-charged to the coal company's account leaving an overdraft, although a credit balance of $2,475.80 appeared on the bank's ledger.

Appellee's bookkeeper testified to having made the deposit before noon. Nothing was said about conditional acceptance.[2] The two checks in question were charged to appellee's account the day received and were returned to her the following afternoon.

---

[1] Appellee owns and operates the Economy Store at Paris.

[2] The deposit consisted of thirteen checks. The deposit slip was made out by appellee's bookkeeper.

When asked whether checks deposited on former occasions had been charged back and their return accepted, appellee's bookkeeper said such checks would be taken to the bank ". . . just as I took these checks —list them and make a deposit. Later the check [if] found not to be good [would be] returned to us." Bank officials testified to the same practice.

On the statement furnished appellee monthly there was printed: "All items are credited subject to final payment."

The bank teller did not examine any of the thirteen checks comprising the deposit except as to indorsements, but on the contrary received the deposit ticket as prepared by appellee, and the checks, and entered the credit.[3]

On the deposit slip [4] was a printed condition permitting the bank to recharge any item drawn on it not good at the close of business on day of deposit.

The court found that the charge-back occurred March 3. There is no testimony to support this finding, although it is conceded that the checks were not returned until the day after deposit.

In the McKeen Case the depositor testified that in his dealings with the bank "They checked [the list], and if there was [a check] not good they would hand it back to me." On cross-examination this testimony was materially weakened by admissions of a different custom.

There is this statement in the McKeen Case: "By [the testimony of McKeen] it is sought to raise a legal presumption that the bank conditionally accepted Blue Ribbon checks. If such custom prevailed, it is immaterial whether items comprising the charge-back were cashed on Saturday,[5] or were included in the Monday deposit. If,

---

[3] In response to a question by the court, appellee's bookkeeper testified it was the bank's policy, when a check was in doubt, to look up the amount in the account of the drawer.

[4] The same notation appears on a "pass book" sometimes used by appellee.

[5] It was McKeen's contention that the checks were cashed Saturday, February 29, with others, and that he received $898 in cash. On this point the opinion states the evidence is not clear—that is, whether the checks were cashed on Saturday, or were part of a deposit made on Monday.

on the other hand, the right to charge arises solely on account of reservations expressed on the deposit ticket, such right must have been exercised not later than the close of business of the day of conditional acceptance."

The first headnote to the McKeen Case summarizes the opinion in this way: "Where a check is deposited in the bank on which it is drawn, the bank has the right, as against such depositor, to accept or reject it or to conditionally receive it, but if it is unqualifiedly accepted, and placed to the credit of the depositor, it cannot thereafter, in the absence of fraud or collusion, be repudiated."

The question here is, Was there a repudiation of a completed transaction?

It must be remembered that the bank reserved the right, by its contract of deposit, to recharge bad checks during the day of receipt. That is what was done. Also, we are of the opinion that a custom of conditionally accepting appellee's deposits was shown. In these respects the case differs from *First National Bank* v. *McKeen, supra.*

The judgment is reversed, and the cause is dismissed.

## ON REHEARING

We are asked to modify the opinion by rendering judgment against John Schwartz and Bryan Nelson.

In appellee's complaints in the court of G. Carey, justice of the peace, it was alleged that a check for $62.63 was issued by the coal company to Schwartz. A similar check was issued to Nelson for $60.43. These checks were indorsed by the payees and cashed by appellee, who in her action against the bank asked in the alternative that the indorsers be made to pay.

In rendering judgments the justice of the peace captioned the causes "Minnie Ihle and John Schwartz, and Minnie Ihle and Bryan Nelson, plaintiffs, against First National Bank at Paris, defendants." There was the recital that ". . . after hearing testimony the court gives judgment for plaintiffs."

The bank's affidavit for appeal shows Schwartz and Nelson to be plaintiffs and the bank "defendants"—the plural term having been used.

In circuit court Schwartz and Nelson are shown as defendants. If it be assumed (and this is probably true) that the judgments of the justice of the peace were improperly written through inadvertence and were cured by the circuit court, the fact remains that judgments in circuit court were in favor of Schwartz and Nelson. It was said: "Plaintiff is entitled to recover from defendant, First National Bank, but not any sum from defendants, Schwartz and Nelson as indorsers of said checks." Again, there was the finding that ". . . defendants, Schwartz and Nelson, are not liable on their respective indorsements to the plaintiff."

While these judgments may have been erroneous, there were no appeals from the circuit court's finding of non-liability, nor was there a motion for new trial. Unless the alleged errors were called to the trial court's attention by appellee, there is nothing before this court for review, and we are without power, under our rules, to modify. *Arkansas Democrat Co. v. Holiman,* 194 Ark. 1155, 106 S. W. 2d 185.